IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00619-PAB-SKC

MEGAN LUNDSTROM,

     Plaintiff,

v.

CHOICE HOTELS INTERNATIONAL, INC.,

     Defendant.

---

## ORDER

---

This matter is before the Court on Choice Hotels International, Inc.'s Corrected Motion to Dismiss Plaintiff's Complaint [Docket No. 12]. Plaintiff responded, Docket No. 15, and defendant replied. Docket No. 20. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

Plaintiff alleges that she was "trafficked for commercial sex" in and around Denver, Colorado beginning in 2009. Docket No. 1 at 2, ¶ 3. In the spring of that year, plaintiff met a man who "appeared to care for her" while she was "falling behind on her housing payments and car payment, and raising two young children on her own." *Id.*; *id.* at 17, ¶ 47. The man, however, became violent, and plaintiff was "forced to provide sexual services to strangers for her traffickers' financial gains" for over two years. *Id.* at

---

[1] The facts are taken from plaintiff's complaint [Docket No. 1] and are presumed to be true for the purposes of this order.

2, ¶ 3.  During this time, plaintiff "was advertised" on Backpage.com and met with men at hotels in the Denver area, enduring "physical assault, psychological torment, verbal abuse[,] and threats of murder by her trafficker."  *Id.*; *id.* at 17, ¶ 51.  Her trafficker asserted himself through "physical beatings, verbal threats[,] and psychological abuse." *Id.* at 17, ¶ 52.

Plaintiff brings this action for damages under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA").  *Id.* at 3, ¶ 6.  Plaintiff claims that her trafficking occurred at the Quality Inn at 9799 East Geddes Avenue in Centennial, Colorado and the Sleep Inn at 12101 Grant Street in Thornton, Colorado. *Id.* at 3–4, ¶ 10.  She alleges that defendant, Choice Hotels International, Inc., "owned, supervised and/or operated" these hotels.  *Id.* at 5, ¶¶ 10.e–10.f.  She alleges that defendant "enabled, harbored, held, facilitated, or otherwise financially benefited, or any combination of the foregoing, from a sex trafficking venture in which [plaintiff] was trafficked for sex, sexually exploited, and victimized in violation of the [TVPRA]."  *Id.*

Plaintiff states that defendant "controls the training and policies for its branded properties," including the locations where plaintiff was trafficked.  *Id.* at 4, ¶ 10.b.  She alleges that, through its "relationship with the staff at the Quality Inn and Sleep Inn hotels" where plaintiff was trafficked, defendant "knowingly received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking."  *Id.*, ¶ 10.c.  She claims that defendant profited from her sex trafficking and "knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture" by leasing rooms to plaintiff "and therefore her trafficker,

2

when [defendant] knew, or should have known, the rooms were being used for forced commercial sex." *Id.* at 21–22, ¶ 71. She alleges that defendant "receives a percentage of the gross room revenue from the money generated by the operations of Quality Inn and Sleep Inn hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms where . . . [p]laintiff was sex trafficked." *Id.* at 4, ¶ 10.d. She claims, upon information and belief, that Quality Inn and Sleep Inn pay a percentage of their total revenue back to defendant and are required to maintain the properties in accordance with the "parent brand's standards" as set forth in the franchise agreement. *Id.* at 12, ¶ 40.

She alleges that, as a direct and proximate result of defendant's refusal to prevent human trafficking at these properties, she was "sex trafficked, sexually exploited, and victimized repeatedly" at defendant's hotels. *Id.* at 2, ¶ 5. Defendant, plaintiff alleges, did not take "timely and effective measures" to prevent trafficking at its properties and instead has "ignored and failed to address the open and obvious presence" of trafficking and has "continued to profit from traffickers renting rooms for the explicit and readily apparent purpose of human trafficking." *Id.* at 1–2, ¶ 2.

Plaintiff states that she was present at defendant's hotels "on an almost weekly basis for nearly two years" and "service[d] ten to fifteen men a day." *Id.* at 2, ¶ 3. Between 2010 and 2011, plaintiff would book a hotel room, would check-in between 9:00 a.m. and 10:00 a.m., and would stay in that room all day, except for lunch. *Id.* at 18, ¶ 56. Plaintiff carried no luggage and never stayed overnight. *Id.* In the first four months of 2011, plaintiff booked a room at the Quality Inn Tech Center on sixteen

separate days. *Id.* at 19, ¶ 59.

She states that both of the defendant's hotels required guests to walk through a main lobby area, which was visible to the hotel's front desk, in order to access rooms. *Id.* at 3–4, ¶ 10; *id.* at 18, ¶ 57.  The front desk staff at the Quality Inn sometimes commented on the address on plaintiff's driver's license, noting that she lived nearby, made comments to her about a "late checkout," winked at plaintiff when she checked in, offered her extra towels, and, once, upgraded plaintiff to a room with a "jetted tub." *Id.* at 19–20, ¶¶ 61–62.  On another occasion, the front desk staff booked plaintiff in a room around the corner from the front desk, "with a sight line of visibility to the front desk." *Id.* at 20, ¶ 62.  On one occasion, after plaintiff's home was burglarized and she had no identification or credit card, one of the hotels permitted her to rent a room with cash. *Id.* at 20, ¶ 63.  Plaintiff states that hotel cleaning staff "saw the rented rooms were left with numerous used condoms and individual sanitary towels," that "[t]he sheets on the beds would rarely be untucked[,] and the showers, towels],] and other hotel amenities were rarely used." *Id.* at 19, ¶ 60.  This continued "nearly weekly" for "nearly two years." *Id.*

Plaintiff brings one claim against defendant for violating the TVPRA. *Id.* at 24–25, ¶¶ 82–86.  She seeks injunctive relief in the form of a judgment requiring defendant to institute sufficient audits, policies, and rules so that all employees and agents of their franchisees insure that actions like those perpetrated against plaintiff no longer occur. *Id.* at 25.  She also seeks compensatory and punitive damages. *Id.* at 26.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  However, a plaintiff still must provide "supporting factual averments" with her allegations.  *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)).  Otherwise, the Court need not accept conclusory allegations.  *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to

dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III.  The Trafficking Victims Protection Reauthorization Act

In 2000, Congress enacted the Trafficking Victims Protection Act, creating criminal offenses for forced labor and sex trafficking.  Pub. L. No. 106-386, 114 Stat. 1464 (2000).  The original Act did not contain a private right of action.  *Griffin v. Alamo*, 2016 WL 7391046, at *2 (W.D. Ark. Dec. 21, 2016).  In 2003, however, Congress added a civil right of action for victims to sue their traffickers.  In 2008, Congress further amended the law to permit victims to sue those who facilitate trafficking ventures.  Pub. L. No. 108-193, 117 Stat. 2875 (2003).  The 2008 law provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (emphasis added).

To state a claim under a § 1595(a) beneficiary theory, a plaintiff must allege facts from which it can reasonably inferred that (1) a defendant "knowingly benefit[ted] financially or by receiving anything of value" (2) from participation in a venture that the

defendant "knew or should have known has engaged in" sex trafficking.  18 U.S.C.

§ 1595(a).   *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020).  A

plaintiff may satisfy these elements in one of two ways.  She may show that the

defendant's own acts, omissions, and state of mind establish each element.

Alternatively, she may impute to the defendant the acts, omissions, and state of mind of

an agent of the defendant.  The former is referred to as "direct liability" and the latter as

"indirect liability."  *See, e.g.*, *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d

921, 935 (D. Ore. 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214,

at *4 (N.D. Cal. July 30, 2020).  Plaintiff asserts her TVPRA claims under both direct

liability and indirect liability theories.

## IV.  ANALYSIS

Defendant moves to dismiss plaintiff's claim under Rule 12(b)(6).  Docket No. 12

a 1.  Defendant raises a number of arguments.  First, defendant contends that plaintiff

has not plausibly alleged an underlying violation of § 1591, which defendant maintains

is necessary to show a violation of § 1595.  *Id.* at 3–4.  Second, defendant argues that

plaintiff has not plausibly alleged that defendant participated in a sex-trafficking

"venture" or that defendant "knew or should have known" of the sex-trafficking venture.

*Id.* at 6–12.  Third, defendant argues that indirect liability does not exist in the TVPRA

and, even if it did, plaintiff has failed to show indirect liability.  *Id.* at 12–14.  Finally,

defendant argues that plaintiff's claims are barred by the statute of limitations.  *Id.* at

14–15.

## A.  Underlying § 1591 Violation

Defendant first argues that plaintiff has failed to plausibly allege an underlying § 1591 violation because she has not identified her trafficker by name, alleged that he accompanied her to any hotel, provided any allegations that an employee of either of the hotels would have been aware of plaintiff's alleged trafficking, or set forth any facts describing any investigation, prosecution, or conviction regarding her trafficking.  Docket No. 12 at 4–5.  Defendant contends that plaintiff has failed to establish that she was trafficked, as opposed to sexually abused or engaged in prostitution, neither of which is sufficient to show a violation of § 1591.  *Id.* at 5.

Plaintiff argues that her allegations state that her trafficker "physically beat her, . . . tracked her down after she attempted to escape him, threatened her with firearms, threatened to kill her and harm her children, and took 100% of the money earned through the sex trafficking."  Docket No. 15 at 3 (quoting Docket No. 1 at 17–18, ¶¶ 52–55).  She claims that this is sufficient to show that she was trafficked.  *Id.*  She also argues that there is no authority requiring her to identify her trafficker or show that he was investigated, prosecuted, or convicted.  *Id.*

As the Court will discuss in greater detail below, defendant is mistaken that a plaintiff bringing a civil claim under § 1595 must plausibly allege each element of criminal liability under § 1591.  *See J.L. v. Best W. Int'l., Inc.*, 521 F. Supp. 3d 1048, 1062 (D. Colo. 2021) (noting that the requirements of § 1591 only apply to criminal violations, not civil actions brought under § 1595 (citing *A.B.*, 455 F. Supp. 3d at 188 ("If we imputed [§ 1591's] standard into section 1595 – which does not define 'participation

in a venture' – we would ignore [§ 1595's] 'knew or should have known' language.")); *see also Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1138 (D. Colo. 2019). Moreover, the Court finds that plaintiff has not pled allegations that are only consistent with sexual abuse or prostitution, rather than trafficking. The Court finds that plaintiff has plausibly alleged that she was trafficked. *S.Y. v. Choice Hotels Int'l., Inc.*, 2021 WL 1610101, at *5 (M.D. Fla. Apr. 26, 2021). Finally, "[t]here is no requirement that the sex trafficker have been convicted criminally to support a civil claim against defendant[] for knowingly financially benefitting from the sex trafficking, and [defendant] provides no legal support for this argument." *Id.*, at *4.

## B.  Direct Liability

Defendant argues that plaintiff has failed to plausibly allege that defendant participated in a "venture" from which it "knowingly benefited," or that defendant knew or should have known of the sex-trafficking venture. Docket No. 12 at 6–12. The Court first considers whether defendant knowingly benefitted and, second, whether defendant participated in a venture that it knew or should have known engaged in sex trafficking.

### 1.  Whether Defendant Knowingly Benefited

Defendant argues that liability requires that it knowingly benefit "from" its participation in a venture that commits trafficking crimes. *Id.* at 6 (citing *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168, 169 (S.D.N.Y. 2019)). Defendant therefore insists that "participation" in a venture requires more than "constructive knowledge" and that "mere failure to prevent" plaintiff's sex trafficking is not sufficient to show the knowingly-benefited element. *Id.* at 6–7. Instead, defendant

argues, "there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit" and that, even if the Court determines constructive knowledge is enough, the relevant constructive knowledge is about whether a sex-trafficking crime occurred under § 1591. *Id.* at 8. Because plaintiff has failed to allege any association between defendant and an "alleged unidentified trafficker," defendant argues, plaintiff has failed to show a "venture." *Id.* at 8–9.

Plaintiff disagrees. She argues that she has established the knowingly-benefited element because she has plausibly alleged that defendant received a financial benefit from the rental of the hotel rooms. Docket No. 15 at 5–6. The Court agrees. As the Court explained in *J.L.*, several other district courts have found that similar allegations are sufficient to plead the knowingly-benefited element. *See, e.g.*, *E.S. v. Best W. Int'l, Inc.*, 2021 WL 37457, at *3 (N.D. Tex. Jan. 4, 2021); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019) ("[T]he rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the [§] 1595(a) standard."); *A.B.*, 455 F. Supp. 3d at 191 (same); *H.H. v. G6 Hosp., LLC*, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019) (same); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1256 (M.D. Fla. 2020) (same); *A.B.*, 484 F. Supp.3d at 936 ("The 'knowingly benefits financially' element of § 1595 merely requires that Defendant knowingly receive a financial benefit[,] and the rental of a hotel room ... constitutes a financial benefit sufficient to meet this element." (internal quotations omitted)). The Court agrees with these cases and finds that plaintiff has sufficiently alleged the knowingly-benefited element under her direct liability theory against

defendant.

Although defendant is correct that the "mere failure to prevent sex trafficking is not sufficient" to show that defendant knowingly benefited from its participation in a venture, *see* Docket No. 12 at 7; *A.B.*, 455 F. Supp. 3d at 182 ("We do not read the [TVPRA] as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking.  We construe the [TVPRA] under its terms as imposing liability should a jury find the business benefitted from participating in a venture it knew or should have known engaged in trafficking."), plaintiff has not claimed that defendant had an obligation to affirmatively stop all trafficking. Rather, plaintiff alleges that defendant ignored her trafficking.  *See, e.g.*, Docket No. 15 at 5 (citing Docket No. 1 at 18–21, ¶¶ 56–70).

As to defendant's argument that plaintiff must show more than "constructive knowledge," the Court disagrees.  As the Court in *A.B.* noted, "the 'should have known' language in the civil liability provision [adds] a constructive knowledge alternative to the existing actual knowledge standard."  *A.B.*, 455 F. Supp. 3d at 192.  Defendant's reliance on *Geiss*, therefore, is misplaced because *Geiss* "assumed the plaintiffs sought to enforce . . . liability against the perpetrators of trafficking and did not examine liability for a person who knowingly benefits from participation in a venture it *knew or should have known* engaged in trafficking."  *Id.*  The Court therefore finds that plaintiff has sufficiently alleged the knowingly-benefited element under her direct-liability theory against defendant.

11

### 2. Whether Defendant Participated in a Venture that It Knew or Should Have Known Engaged in Sex Trafficking

Defendant also argues that plaintiff has failed to plausibly allege a sex-trafficking "venture" between defendant and the alleged trafficker because plaintiff has not established that defendant and the trafficker were "associated in fact" toward a common purpose. Docket No. 12 at 8–9 (citing *Boyle v. United States*, 556 U.S. 938, 948 (2009)). Defendant insists that plaintiff's allegations that the hotels "repeatedly leas[ed] rooms" to plaintiff and "therefore [to] her trafficker, when they knew, or should have known, the rooms were being used for forced commercial sex acts," fail to establish that defendant intended to enter into a venture with plaintiff's trafficker. *Id.* at 9 (quoting Docket No. 1 at 21, ¶ 71). Plaintiff has also not alleged, according to defendant, that defendant had a "joint right of control" over the venture, which, defendant insists, is a necessary element. *Id.*

Plaintiff argues that she plausibly alleged a venture even though she did not allege an actual agreement between defendant and the trafficker because defendant rented rooms to plaintiff, "a victim of sex trafficking, on numerous occasions," hotel staff were aware of plaintiff's numerous visits to the hotels and that she lived close by, there were many men who visited her room, and she only stayed at the hotels during the day. Docket No. 15 at 5–6 (citing Docket No. 1 at 18–21, ¶¶ 56–70).

As an initial matter, although defendant does not cite the Racketeer Influenced and Corruption Organization ("RICO") Act by name, defendant relies on *Boyle*, which is a RICO case, for its definition of "venture," namely, association in fact toward a common purpose. Docket No. 12 at 8–9. To the extent defendant's argument is that

12

association in fact toward a common purpose requires an "overt act," defendant is mistaken.  As this Court has noted, many "district courts to have examined the issue have rejected the overt act argument."  *J.L.*, 521 F. Supp. 3d at 1062 (citing *E.S.*, 2021 WL 37457, at *4; *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d at 968–69; *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794, at *1 n. 1 (N.D. Cal. June 5, 2020); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 153–54 (E.D.N.Y. 2020); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192, *6 (S.D. Ohio Mar. 16, 2020).  Those courts reasoned that "applying the definition of 'participation in a venture' provided for in § 1591[] to the requirements under § 1595 would void the 'known or should have known' language of § 1595" and violate the "cardinal principle of statutory construction that a statute ought, upon the whole, to be construed so that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *M.A.*, 425 F. Supp 3d at 969 (internal quotation and citation omitted).  The Court agrees with this analysis and concludes that plaintiff is not required to establish an overt act in furtherance of or actual participation in sex trafficking under § 1595.  *Cf. Ricchio v. McLean*, 853 F.3d 553, 555–56 (1st Cir. 2017) (holding that hotel owners and sex traffickers engaged in a "venture" because the hotel owners knowingly rented rooms to the trafficker "for the purpose" of trafficking the plaintiff.))

The Court has also previously found unpersuasive defendant's argument that renting hotel rooms is not sufficient to constitute a benefit under the TVPRA.  *See J.L.*, 521 F. Supp. 3d at 1061 (citing *M.A.*, 425 F. Supp. 3d at 965 ("[T]he rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet

this element of the [§] 1595(a) standard.")).

The Court next considers whether plaintiff has plausibly alleged that defendant participated in a venture which it knew or should have known engaged in sex trafficking. Plaintiff alleges that defendant, Choice Hotels International, Inc., not the Quality Inn or Sleep Inn hotels where she claims that she was trafficked, "actively participated in this illegal endeavor by knowingly or negligently providing lodging to [plaintiff] where her trafficker sent her to perform sex acts under the threat of her safety and her children's safety."  Docket No. 1 at 22, ¶ 73.

Defendant argues that plaintiff has not shown that "defendant knew or should have known of sex trafficking *by the particular venture in which the defendant allegedly participated.*"  Docket No. 12 at 10 (quoting *H.G. v. Inter-Cont'l. Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020)).  Defendant notes that plaintiff acknowledges that the hotels are owned and operated by entities other than defendant and claims that plaintiff has not alleged any interaction between defendant and her trafficker, "let alone that [defendant] participated in a venture with her trafficker."  *Id.* at 11.  At most, defendant argues, plaintiff has shown that defendant has general knowledge that sex trafficking occurs at hotels nationwide; however, "[g]eneral knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate that [a franchisor] participated in the trafficking of plaintiff."  *Id.* at 11–12 (quoting *J.L.*, 521 F. Supp. 3d at 1064).

Plaintiff responds by noting her allegations that defendant adopted a "Human Rights Policy" in 2008 that "condemns human trafficking and commits to raising awareness of this issue."  Docket No. 15 at 6–7 (citing Docket No. 1 at 10, ¶ 31).

14

Plaintiff also argues that defendant knew or should have known that she was being trafficked at the hotels because she stayed there only during the day, there was "consistent traffic of men in and out of her room and past staff at the front desk," she carried no luggage, the room amenities were rarely used, and there were numerous condoms and sanitary towels left in the room.  *Id.* at 7.  This continued for nearly two years, and hotel staff commented on plaintiff's late checkouts, winked at her, and yet "[n]o staff, management[,] or employee ever addressed or questioned what was happening."  *Id.*  Plaintiff thus insists that she has shown a "course of routine conduct at the Quality Inn" as a result of the sex trafficking enterprise.  *Id.*  Plaintiff also argues that "[k]nowledge, and other conditions of a person's mind may be alleged generally."  *Id.* at 7–8 (quoting *S.Y.*, 2021 WL 1610101, at *7).

In determining whether a plaintiff's allegations – that defendant participated in a venture which it knew or should have known engaged in sex trafficking – are sufficient, the Court will consider the two cases that represent the ends of the spectrum on TVPRA civil liability.  *See J.L.*, 521 F. Supp. 3d at 1063–64.  These cases are *Ricchio*, mentioned above, and *Lawson v. Rubin*, 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018). In *Ricchio*, along with the allegations of "high-fives" between the trafficker and hotel owner while discussing "getting this thing [a past business relationship between the trafficker and hotel owner] going again," the plaintiff alleged that "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape."  853 F.3d at 555.  Plaintiff's allegations in this case do not rise to the level of obviousness in *Ricchio* that she was

being sold for sex against her will in partnership with defendant or even in partnership with the identified hotels.  She does not allege a direct agreement between the trafficker and hotel staff or that particular hotel staff members saw her in a disheveled state, which could indicate that she was being held against her will for an extended time.  In fact, plaintiff never alleges that her trafficker was present at either of the two hotels.

In *Lawson*, at the other end of the spectrum, the plaintiffs sued Blue Icarus, the owner of a condo leased to a sex trafficker, Howard Rubin.  Rubin procured women who he then sexually assaulted and abused.  *Lawson*, 2018 WL 2012869, at *13.  The plaintiffs' theory "depend[ed] on a duty to monitor or duty to inspect the property it leased to Rubin."  *Id.* ("Plaintiffs did not claim that Blue Icarus had actual notice of the alleged activity, only that it should have known about alleged trafficking based on its duty to monitor the premises.").  The plaintiffs claimed that Blue Icarus should have been aware of the trafficking because an ambulance was called to the property to treat a plaintiff who was sick with anxiety.  *Id.* at *14.  The court found the plaintiffs' allegations insufficient to hold Blue Icarus liable under § 1595 because Blue Icarus did not have reason to know about the trafficking.  *Id.*

Plaintiff's allegations lie somewhere between those in *Lawson* and those in *J.L.*  In *J.L.*, the plaintiff alleged that she was trafficked at multiple hotels in the Denver area, that she would arrive without luggage and would leave days later, in the same clothes as when she arrived, looking visibly malnourished and bruised, and visibly injured.  *J.L.*, 521 F. Supp. at 1057–62.  In one instance, the plaintiff alleged, she was "injured so badly by a buyer who . . . slammed her head so hard against a dresser that the dresser

16

was damaged[, and plaintiff] was screaming so loudly . . . that her trafficker decided to move her to a different hotel." *Id.* at 1057 (citation omitted). In another instance, the plaintiff's trafficker "tried to forcefully inject [the plaintiff] with heroin as his partners held her down." *Id.* at 1058 (citation omitted). The plaintiff "screamed as loud[ly] as she could to stop them in any way possible." *Id.* (citation omitted). Unlike in *J.L.*, plaintiff in this case went home at night, was in the hotel weekly, rather than everyday, and was not confined to her room all day. There is also no allegation that plaintiff's trafficker was ever present in either hotel. Plaintiff has not plausibly established that hotel staff were aware that she was being sold for sex against her will.

Plaintiff's allegations also consist of signs that would be less obvious to hotel staff than the plaintiff's allegations in *M.A.* In that case, the trafficker booked the room, routinely paid in cash, as opposed to paying in cash on one occasion, and escorted the plaintiff to her room in view of the front desk. 425 F. Supp. 3d at 967. The plaintiff in that case also alleged that hotel staff ignored the plaintiff's cries. *Id.* The *M.A.* court held that these allegations were insufficient to establish the defendants' actual knowledge because the plaintiff did not allege that any member of the hotel staff heard and ignored her pleas or that she alerted any staff member to her need for help. *Id.* at 968. There are also no allegations that plaintiff made a member of the staff at either hotel aware that she was being forced to engage in commercial sex activity, as opposed to engaging in commercial sex by choice, which the TVPRA does not address. *See A.B.*, 484 F. Supp. 3d at 940; *Doe 1 v. Red Roof Inns, Inc.*, 2020 WL 1872335, at *3 (N.D Ga. Apr. 13, 2020). Plaintiff in this case has failed to show actual knowledge of

her trafficking by the Quality Inn or Sleep Inn.

Further, plaintiff's allegations do not plausibly establish that defendant, the parent company or franchisor of the Quality Inn and Sleep Inn, should have known about plaintiff's sex trafficking at its hotels. *See J.L.*, 521 F. Supp. 3d at 1064; *A.B.*, 484 F. Supp. 3d at 939. Plaintiff alleges that defendant was on notice about the prevalence of sex trafficking generally at its hotels and in the hotel industry. *See* Docket No. 1 at 6–11, ¶¶ 15–36; *id.* at 13–16, ¶¶ 45–46. But this is not sufficient to show that defendant should have known about what happened to plaintiff. *See J.L.*, 521 F. Supp. 3d at 1064; *S.J.*, 473 F. Supp. 3d at 154–55 (noting that § 1595 "speaks in singular terms – 'participation in a venture which that person . . . should have known has engaged in an act in violation of this chapter'" means knowledge of a general sex trafficking problem is not sufficient and thus finding that hotel franchisor defendants could not be held directly liable under TVPRA). General knowledge of commercial sex activity occurring at hotels across the United States, or even defendant's properties, is insufficient on its own to demonstrate that defendant participated in the trafficking of plaintiff. *See J.L.*, 521 F. Supp. 3d at 1064; *A.B.*, 484 F. Supp. 3d at 939.

Plaintiff alleges that defendant "knew, or should have known," that she was being trafficked because "she stayed at the hotel only during [the] day"; "always checked in early"; "always left the hotels by about 5:00 p.m."; "there was consistent traffic of men in and out of her room and past staff at the front desk"; plaintiff "carried no luggage" and "did not stay overnight" or use rooms' amenities; and "there were numerous condoms and single use sanitary towels left in the room." Docket No. 15 at 7. Plaintiff

18

emphasizes that this pattern "repeated . . . for almost two years, on a nearly weekly basis" and that "hotel staff had seen [p]laintiff on numerous occasions, had seen and commented on her ID which shows she lives in the area, had made comments to her about "late checkouts", winked at her." *Id.*  None of these allegations, however, plausibly establish why defendant, rather than the specific hotels that plaintiff visited, should have been aware of plaintiff's trafficking.  Moreover, plaintiff's allegations that defendant owned, supervised, and operated the hotels does not equate to knowledge of plaintiff or of her trafficking.  Thus, the complaint fails to allege facts as to how defendant, the parent company or franchisor, was aware or should have been aware of these facts.  *See J.L.*, 521 F. Supp. 3d at 1064; *A.B.*, 484 F. Supp. 3d at 939.  Accordingly, the Court finds that plaintiff has not alleged facts sufficient to state a claim for direct liability under the TVPRA against defendant.

### C.  Indirect Liability

Plaintiff alleges that defendant has an actual or apparent agency relationship with the Quality Inn and Sleep Inn hotels where she was allegedly trafficked.  *See* Docket No. 1 at 14–16, ¶¶ 46.e–g.  Defendant argues that there is no indirect liability in the TVPRA.  Docket No. 12 at 12.  Defendant, however, provides no authority for this position and is mistaken.  *See J.L.*, 521 F. Supp. 3d at 1064–65 (noting that numerous district courts have rejected the argument that the TVPRA does not permit agency liability); *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *8 (N.D. Cal. Oct. 28, 2020); *B.M.*, 2020 WL 4368214, at *7; *M.A.*, 425 F. Supp. 3d at 972.  Because the TVPRA is silent, courts have held that the federal common law of agency should apply.

19

*See J.L.*, 521 F. Supp. 3d at 1064–65; *J.C.*, 2020 WL 6318707, at *8.  Courts in the Tenth Circuit apply common-law agency principles from the Restatement (Third) of Agency.  *United States v. Speakman*, 594 F.3d 1165, 1173 (10th Cir. 2010) ("employers are generally held liable on that theory not because of any act or omission on their part, but rather because the employee was acting within the scope of his duty" (citing Restatement (Third) Agency § 7.07)).  To state a claim for vicarious liability under an agency theory, a plaintiff must plausibly allege that (1) defendants and their corresponding hotels were in an agency relationship, and (2) the hotels or hotel staff are plausibly liable under § 1595.  *J.L.*, 521 F. Supp. 3d at 1064–65; *A.B.*, 484 F. Supp. 3d at 939.

Plaintiff alleges that defendant controls the training and policies for its hotels, knowingly benefited from participating in a venture with the trafficker, and receives a percentage of the gross room rental revenue.  Docket No. 15 at 8–9 (citing Docket No. 1 at 4–5, ¶¶ 10.a–g).  She also alleges that defendant lends its name and likeness to properties, enforces its brand standards through franchise agreements, and markets and lists its properties in a global database.  *Id.* (citing Docket No. 1 at 11–13, ¶¶ 37–44).  Plaintiff's allegations regarding the training or policies that defendant controls, however, are at best vague and conclusory because they are devoid of any details.  Nevertheless, the Court will assume that the allegations are sufficient to show an actual agency relationship between defendant and the Quality Inn and Sleep Inn properties in this case.  *See, J.L.*, 521 F. Supp. 3d at 1065 (finding similar allegations sufficient); *A.B.*, 484 F. Supp. 3d at 939 (finding similar allegations sufficient to plead an

agency relationship where plaintiff alleged facts to support her theory that defendants had authority to control aspects of the hotel operations connected to her claim, including "hosting online bookings," "making employment decisions," and "controlling training and policies"; dismissing indirect liability claim on other grounds); *S.Y.*, 476 F. Supp. 3d at 1258 ("Plaintiffs correctly respond that they do not need to prove an agency relationship at this stage, but simply set forth plausible allegations that one exists. Having reviewed the allegations at issue, the Court finds them sufficient to satisfy the motion to dismiss standard." (citation omitted)).

Even assuming that plaintiff's allegations were sufficient to show an actual agency relationship, the Court finds that plaintiff fails to state a claim under an agency theory because the complaint does not plausibly allege that the hotels are liable under § 1595. *See J.L.*, 521 F. Supp. 3d at 1073; *A.B.*, F. Supp. 3d at 941. Plaintiff has failed to show that the hotels knew or should have known that plaintiff was being trafficked. The deficiencies in plaintiff's complaint are similar to those that the Court found in *J.L.*, where the plaintiff did not allege that staff noticed her physical state, traffic in and out of her room, and state of her room to be signs of trafficking, let alone that defendant was aware of the facts of these signs. The Court notes that many of the allegations in this case appear to be copied word-for-word from the complaint in *J.L.* Moreover, in *J.L.*, the Court contrasted the plaintiff's allegations with those where courts have found the allegations to be sufficient. The Court observed the plaintiff's allegations in *A.B.*, 455 F. Supp. 3d at 189–90, where the plaintiff alleged that staff were aware of "loud altercations" as well as "constant" attacks on the plaintiff, and in

*H.H.*, 2019 WL 6682152, at \*1, where the plaintiff alleged that hotel staff discovered her chained up in the bathroom and ignored her plea for help.  Plaintiff does not allege that hotel staff "observed her trafficker forcefully bring her to a hotel, attack her, restrain her, or argue with her."  *See A.B.*, 484 F. Supp. 3d at 921; *H.H.*, 2019 WL 6682152, at \*1 (alleging signs of trafficking such as branding, restraints, bruises, and physical deterioration); *B.M.*, 2020 WL 4368214, at \*6 (alleging front desk staff had personal relationships with traffickers).  While plaintiff alleges various indicia of trafficking, for instance, that staff noticed her check-in and check-out patterns, the frequency of her visits, that there were used condoms in the room, she does not allege that hotel staff actually noticed these to be signs of trafficking.  Because these allegations are not sufficient for the Court to conclude that the hotels, i.e., defendant's agents, knew of plaintiff's trafficking, as opposed to her commercial sex activity, plaintiff necessarily has not stated a claim that defendant could be liable under an actual agency theory.  *See J.L.*, 521 F. Supp. 3d at 1073; *A.B.*, 484 F. Supp. 3d at 940–941.

While plaintiff does not appear to contest the issue of apparent agency in response to defendant's motion, *see generally* Docket No. 15, the Court notes that, to establish liability based on apparent agency, plaintiff would have to show that acts of the defendant led plaintiff to believe that the Quality Inn or the Sleep Inn were agents of defendant and that plaintiff relied on that belief.  *See* Restatement (Third) of Agency § 2.03 (2006); *see also id.* at § 2.03 cmt. c. ("Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the

22

principal."). Plaintiff alleges that defendant provides the Quality Inn and Sleep Inn "its identity" through "signage on and in front of each building." Docket No. 1 at 11, ¶ 38; *see also id.* at 15–16, ¶ 46.g ("An apparent agency also exists between [d]efendant [] and Quality Inn and Sleep Inn hotels. Defendant [] held out Quality Inn and Sleep Inn hotels to the public as possessing authority to act on its behalf."). But plaintiff has not alleged that she relied on any representation by defendant, Quality Inn, or Sleep Inn when she was trafficked. Therefore, an apparent agency theory of liability does not comport with the underlying facts of this case. *J.L.*, 521 F. Supp. 3d at 1065; *A.B.*, 484 F. Supp. 3d at 942. The Court therefore finds that plaintiff has failed to allege the elements of apparent authority.

### E. Statute of Limitations

The TVPRA states that "[n]o action may be maintained . . . unless it is commenced not later than the later of . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1). Plaintiff alleges that she was trafficked "[b]eginning in the [s]pring of 2009," states that she was advertised on Backpage.com for "over two years" and that she was present at defendant's hotels for "nearly two years." Docket No. 1 at 2, ¶ 3. She also states that she booked a room at the Quality Inn on "sixteen separate days" during the first four months of 2011. *Id.* at 19, ¶ 59. Defendant argues that, because plaintiff alleges that her trafficking occurred between 2009 and 2011, but fails to provide specific dates that she was present at the specific Quality Inn and Sleep Inn hotels at issue, her trafficking began more than ten years before the filing of the lawsuit, which was in March 2021, and her claims are time-barred. Docket No. 12 at 14–15. In

response, plaintiff emphasizes that she was present at the Quality Inn until April 2011 and filed her lawsuit less than ten years later.  Docket No. 15 at 9–10.  She also argues that her trafficking was a pattern of continuing wrongful conduct and that, under the "continuing violation doctrine," which permits "a plaintiff to challenge incidents that occurred outside the statute of limitations if the incidents are sufficiently related and thereby constitute a continuing pattern of wrongful conduct," *id.* at 9 (quoting *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1169 (D. Colo. 2010)), and "at least one act [] occurred within the statutory filing period."  *Id.* (quoting *Fogle v. Slack,* 05-cv-1211-KHV, 2010 WL 2757374, at *3 (D. Colo. July 13, 2010), *aff'd*, 419 F. App'x 860 (10th Cir. 2011) (unpublished)).

The Court declines to consider this argument because the Court has found that plaintiff has not plausibly alleged that defendant violated the TVPRA.  The Court notes, however, that, even if plaintiff had plausibly alleged the elements of a TVPRA claim, the portions of her claims resting on trafficking prior to March 2, 2011 (ten years prior to the filing of her complaint) would be time-barred.  *See H.G.*, 489 F. Supp. 3d at 710 (finding any claims arising from more than ten years before the filing of the complaint to be barred); *Ardolf v. Weber*, 2020 WL 5209525, at *4 (S.D.N.Y. Sept. 1, 2020) ("Accordingly, because [p]laintiff failed to commence this action within ten years of the accrual of the alleged cause of action, it is barred by the statute of limitations.").

## V.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Choice Hotels International, Inc.'s Corrected Motion to Dismiss

Plaintiff's Complaint [Docket No. 12] is **GRANTED**. It is further

      **ORDERED** that plaintiff's claim for relief is **DISMISSED with prejudice**. It is

further

      **ORDERED** that this case is closed.


      DATED November 30, 2021.


                      BY THE COURT:


                      PHILIP A. BRIMMER
                      Chief United States District Judge